GOLDBERG, Circuit Judge:
 

 This ERISA case is on appeal from the district court’s entry of summary judgment in favor of the defendant NL Industries. The district court dismissed plaintiff John E. Fontenot’s complaint which alleged that NL Industries had violated ERISA, 29 U.S.C. § 1001,
 
 et seq.,
 
 by excluding him from the company’s senior executive severance plan. The court held that the severance plan was not a “plan” within the meaning of ERISA, and accordingly, ERISA provided no basis for relief. Alternatively, the court held that Fontenot waived his entitlements to any and all benefits under the severance plan. Because we agree that the severance plan is not a “plan” within the meaning of ERISA, we affirm the judgment below without reaching the waiver issue.
 

 The facts underlying this case are largely uncontested, and for purposes of this appeal, are basically irrelevant. Suffice it to say that Fontenot was employed with NL Industries since July 1978 as a manager of mechanical engineering. Over time, he received several promotions, rising to the position of vice president of the newly organized NL Baroid Technology. NL Industries, in the meantime, was the target of a takeover. In an effort to stymie any takeover attempts, NL Industries instituted the NL Senior Executive Severance Plan (the “severance plan”). In Wall Street terms, the severance plan was a “golden parachute,” providing that if an executive was terminated within two years of a change of control, the company would pay the executive a lump sum cash payment of three times his highest annual compensation for the preceding three years, as well as a three year continuation of certain benefits. Only a limited number of executives at NL Industries were included in the severance plan; Fontenot was not one of them.
 

 When NL Industries was taken over in June 1986, Fontenot learned that he had no parachute: he had not been included in the severance plan. One year later, he was terminated. At that time, Fontenot entered into an outplacement arrangement with NL Industries under which he stayed on the company payroll for six months while seeking out new employment. As a condition of participation, Fontenot signed a document waiving his rights to “vacation entitlement, separation allowance, as well as participation in any incentive plan.”
 

 Fontenot eventually requested benefits under the severance plan which request was denied. He then brought this lawsuit alleging his entitlements to the severance benefits under the auspices of ERISA. The district court dismissed his claims on defendant NL Industries’ motion for sum
 
 *962
 
 mary judgment. Relying on the Supreme Court’s decision in
 
 Fort Halifax Packing Co. v. Coyne,
 
 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987) and our decision in
 
 Wells v. General Motors Corp.,
 
 881 F.2d 166, 176 (5th Cir.1989),
 
 cert. denied,
 
 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990), the district court held:
 

 [T]he NLSES Plan required Defendant to make only a one-time lump sum payment to certain employees. The requirement to pay was triggered by a single event. This single event — the change of control in NL Industries, Inc. — was a contingency that may never have materialized. Defendant may potentially never have had to make severance payments pursuant to the NLSES Plan. This theoretical possibility of a one-time obligation in the future created no need for an on-going administrative program to process claims and pay benefits. Consequently, the NLSES Plan is not an employee benefit plan and therefore is not governed by ERISA.
 

 District court op. at 7.
 

 Fort Halifax
 
 held that a lump sum severance payment, triggered by a single event that may never occur, is not a “plan” for purposes of ERISA:
 

 The requirement of a one-time lump sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer’s obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer’s obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well
 
 never
 
 have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.
 

 482 U.S. at 12, 107 S.Ct. at 2218 (emphasis in original). The benefits at issue in
 
 Fort Halifax
 
 were to be provided by the employer pursuant to a state statute. The statute required that “any employer that terminates operations at a plant with 100 or more employees, or relocates those operations more than 100 miles away, must provide one week’s pay for each year of employment to all employees who have worked in the plant at least three years.”
 
 Id.
 
 at 5, 107 S.Ct. at 2214. The Supreme Court held that the statute was not preempted by ERISA “because the statute neither establishes, nor requires an employer to maintain, an employee welfare benefit ‘plan’ ” within the meaning of the ERISA statute.
 
 Id.
 
 at 6, 107 S.Ct. at 2215.
 

 In
 
 Wells,
 
 we held that General Motors’ “procedure by which employees could elect to receive a one-time lump payment if they ceased working at the plant” was not an ERISA plan. We were persuaded by the fact that:
 

 [t]he plan was not ongoing, nor was there any need for continuing administration of the payment program.... The facts that GM made the payment pursuant to a Voluntary Termination of Employment “Plan” and that the employees received a benefit do not convert the plan into an “employee benefit plan” for purposes of ERISA.
 

 881 F.2d at 176.
 

 Fontenot has offered no meaningful basis for distinguishing the “plans” at issue in
 
 Fort Halifax
 
 and
 
 Wells
 
 from the severance plan at issue in this case. NL Industries’ severance plan involves “a one-time lump sum payment triggered by a single event ... that may never materialize,” it “requires no administrative scheme whatsoever to meet the employer’s obligation,” and “[t]he employer assumes no responsibility to pay benefits on a regular basis ”
 
 Fort Halifax,
 
 482 U.S. at 12, 107 S.Ct. at 2218;
 
 accord Wells,
 
 881 F.2d at 176. The decision in
 
 Pane v. RCA Corp.,
 
 667 F.Supp. 168 (D.N.J.1987),
 
 aff'd,
 
 868
 
 *963
 
 F.2d 631 (3d Cir.1989), relied upon Fontenot in support of his position, does not prescribe a different conclusion. There, the severance agreements “required an administrative scheme,” 868 F.2d at 635, because “the circumstances of each employee’s termination [had to be] analyzed in light of [certain] criteria.” 667 F.Supp. at 170-71. In contrast, NL Industries’ severance plan requires no administrative scheme because those employees included in the plan were to receive benefits upon termination regardless of the reason for termination. Surely,
 
 Pane
 
 does not stand for the proposition that every “golden parachute” is an ERISA plan.
 

 Because we conclude that the severance plan is not governed by ERISA, we must pull the rip cord on this appeal. But as we jump from this appellate plane, we are quite confident that we can land safely on the district court’s judgment.
 

 AFFIRMED.