REVISED NOVEMBER 19, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-31004

ALLAN TINOCO; VASSILIOS VOULGARAKIS,

Plaintiffs-Appellees,

VERSUS

MARINE CHARTERING COMPANY, INC.,
and as successor in interest to
Marine Management and Consultant, Ltd.

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Louisiana

October 31, 2002

Before DeMOSS, STEWART, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

Appellant Marine Chartering Company, Inc. (Marine Chartering) appeals from a final judgment and order dismissing without prejudice the action of Appellees, Allan Tinoco (Tinoco) and Vassilios Voulgarakis (Voulgarakis) (referred to collectively as "Appellees"), based on the district court's finding that it lacked subject matter jurisdiction. Marine Chartering also appeals an order from the district court denying its motion for summary

judgment and requests attorney's fees and costs.  We AFFIRM the district court's final judgment and order dismissing without prejudice the action of Appellees.  We do not reach the issues raised by Marine Chartering concerning the district court's denial of Marine Chartering's motion for summary judgment or its request for attorney's fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

Marine Chartering was in the business of acting as a shipping agent, broker, and consultant.  Marine Management and Consulting (Marine Management) was in the business of ship management.  When Marine Management's major clients sold their ships, the company was forced to cease operations and it was liquidated and sold to Marine Chartering effective March 31, 1998.

Before March 31, 1998, Marine Management maintained a Profit Sharing Retirement Plan for the benefit of its employees.  The company, however, did not offer or provide any other retirement or severance benefits to its employees.  Similarly, Marine Chartering had also maintained a Profit Sharing Retirement Plan for the benefit of its employees.

Previously, on January 1, 1989, Marine Chartering established an Early Retiree Health Care Plan (ERHCP) "to provide temporary health-care benefits to Employees who elect Voluntary Early Retirement from the time of such Voluntary Early Retirement until the date the Employee becomes eligible for Social Security

2

Benefits." Marine Chartering's Early Retiree Health Care Plan was wholly unfunded. The ERHCP was payable entirely out of Marine Chartering's general assets. Furthermore, the ERHCP did not require employee contributions, and provided no benefits beyond age 62. In addition, the ERHCP was expressly subject to amendment, suspension, or termination at any time pursuant to the following provisions contained in the "Summary Plan Description":

> Section 12.  <u>Amendment, Suspension or Termination of the Plan:</u>
>
> The Board of Directors may amend, suspend or terminate the Plan at any time, in whole or in part.  The Board of Directors specifically reserves the right to terminate benefit payments at any time, even if such benefits are in pay status.

The "Summary Plan Description" also provided: "The Personnel Committee shall have sole discretion in determining whether an Employee is eligible to participate in the Plan." "Personnel Committee" is defined by the ERHCP as "the named fiduciary with the discretionary authority to and the responsibility for: (i) construction of the terms of the Plan, and (ii) determination of eligibility for benefits."

At all pertinent times, Appellee Tinoco was Marine Management's Accountant, Treasurer, and Shareholder. Appellee Voulgarakis was Marine Management's Technical Marine Engineer, Vice President, Director and Shareholder. On March 18, 1998, both Appellees attended Marine Management's annual meeting of the Shareholders in New Orleans. At that meeting, Marine Management

3

announced that it would cease operations and be liquidated and sold to Marine Chartering, and that some of its employees would be terminated. Marine Management also announced that Marine Chartering's ERHCP would be adopted and that those employees who had worked for Marine Management for 15 years and who had attained the age of 55 would qualify for the plan. In addition, the company announced that the funds in the Marine Management Profit Sharing Retirement Plan would be rolled over into the Marine Chartering Profit Sharing Retirement Plan.

Also on March 18, 1998, both Appellees attended a meeting of the Board of Directors. There, Tinoco learned that he would become a temporary employee of Marine Chartering until June 30, 1998, or until completion of accounting work arising out of Marine Management's liquidation, at which time his employment would be terminated. Voulgarakis learned he too would become a temporary employee of Marine Chartering until April 30, 1998, at which time his employment would be terminated. The Appellees also learned that Marine Chartering was giving them "special consideration by making the Early Retiree Health Care Plan available to them as a severance benefit upon their anticipated retirement or termination." Tinoco's temporary employment was terminated by Marine Chartering on or about December 31, 1998. Voulgarakis was terminated by Marine Chartering on or about April 30, 1998. However, Marine Chartering retained Voulgarakis as a consultant until July 1998.

On January 27, 2000, Marine Chartering's Board of Directors adopted the following resolution: "RESOLVED, That the Early Retiree Health Care Plan adopted effective January 1, 1989 is hereby withdrawn, canceled and discontinued as of February 1, 2000." Both Appellees were notified by letter that their benefits under the ERHCP had been terminated.

Appellees retained attorney Lloyd N. Frischertz (Frischertz), who sent a letter to Marine Chartering dated February 18, 2000, claiming that Appellees were entitled to continue receiving benefits under the ERHCP even though the Board of Directors had terminated the plan. Marine Chartering responded to Frischertz's letter denying the Appellees' claims in a letter dated March 10, 2000, stating:

> In both cases, they were given special consideration by [Marine Chartering] to enjoy the benefits of this plan, even though, technically, they were not eligible. This was done in deference to the fact that they would likely have to be released and it was the Company's desire to provide them with as soft a cushion for landing as possible, for as long as possible. This was accomplished through January 31, 2000 when the [Marine Chartering] Board of Directors finally had to enact its right to terminate the benefit, not only for these two employees to whom this special consideration was given, but to all others who were or would be eligible.

As a result of Marine Chartering's response letter, Appellees filed their Complaint herein alleging in part that "the early retirement benefits were in a pay-status, that the benefits had accrued and [Appellees] had become vested and, as such, under ERISA, Marine Chartering legally could not terminate said

5

benefits."  In addition, Appellees claimed "monthly early retirement benefits . . . together with prejudgment interest and reasonable attorney's fees."  On or about September 26, 2000, Marine Chartering filed an Answer to Appellees' Complaint denying the allegations and praying for judgment denying the relief demanded in the Complaint and requested that reasonable attorney's fees and costs be awarded to Marine Chartering.

On February 26, 2001, Marine Chartering filed a Motion for Summary Judgment on the grounds that the benefits offered to and accepted by Appellees were a non-vested and terminable severance pay arrangement and, therefore, an employee welfare benefit plan within the meaning of ERISA.  The district court, however, questioned whether the benefits received by Appellees were actually subject to ERISA, or whether they instead should be viewed simply as two isolated agreements to pay Appellees a fixed amount until their 62nd birthdays.  The district court was concerned that in the latter event, it would lack subject matter jurisdiction over the case.  As a result, the district court denied Marine Chartering's motion for summary judgment "as premature, without prejudice to be re-urged at a later date if appropriate," and ordered the parties to brief the issue of whether federal subject matter jurisdiction was present in the case.

After reviewing the briefing on the issue, the district court entered a Minute Entry finding that:  "To the extent that the continuing nature of the payments in this case might make the issue

6

before it a close call, the Court observes that the litigants, who appear to consent to federal jurisdiction, have simply failed to conclusively establish it." The district court concluded that "it appears the payments to [Appellees] were not made pursuant to an ERISA-governed plan." Therefore, the district court entered Judgment on August 2, 2001, dismissing the Appellees' suit without prejudice. The district court noted in a footnote that it was not ruling on any state law claims such as breach of contract that Appellees may have.

Marine Chartering now appeals the district court's judgment, contending that the district court erred in denying its motion for summary judgment, and that this Court should reverse that ruling and render judgment granting Marine Chartering's motion. Marine Chartering also requests this Court to award it reasonable attorney's fees and costs, an issue which Marine Chartering contends should be remanded to the district court for determination of the amounts to be recovered.

## DISCUSSION

This Court's review of subject matter jurisdiction is plenary. *Ceres Gulf v. Cooper,* 957 F.2d 1199, 1204 (5th Cir. 1992). When a district court dismisses an action for lack of subject matter jurisdiction based on the "undisputed facts in the record," this Court is limited "to determining whether the district court's application of the law is correct and whether the facts are indeed

undisputed.  Our review of the district court's application of the law is, of course, de novo." *Ynclan v. Department of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991).

Marine Chartering contends that it set up an administrative scheme to pay benefits to Appellees on a regular basis, rather than offering them a one-time, lump-sum payment triggered by a single event.  Marine Chartering, therefore, argues that the Appellees' severance pay plan under which they claim benefits is an employee welfare benefit plan within the meaning of ERISA such that federal subject matter jurisdiction exists.  *See* **29 U.S.C. § 1002(1)** (defining "employee welfare benefit plan").

Appellees, on the other hand, contend that the change of control of Marine Management was the single event that triggered Marine Chartering's obligation to pay benefits.  Therefore, Appellees argue there was no need for an ongoing administrative program to process claims and benefits.  Appellees, furthermore, assert that the simple arithmetical calculations and clerical determinations that Marine Chartering was required to make under the ERHCP simply do not amount to the "ongoing, particularized, administrative, discretionary analysis" contemplated under ERISA. *See* **Bogue v. Ampex Corp.,** 976 F.2d 1319, 1323 (9th Cir. 1992).

Congress passed ERISA in 1974 "to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits."  **Massachusetts v.**

*Morash,* 490 U.S. 107, 112 (1989). To accomplish that goal, Congress "established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator." *Id.* at 115. An agreement to pay severance benefits may constitute an employee welfare benefit plan. However, such an agreement is subject to ERISA's control only if it creates benefits requiring "an ongoing administrative program to meet the employer's obligation." *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11 (1987).

In *Fort Halifax Packing Co.,* the Supreme Court held that a state statute requiring employers who ceased operations to make a one-time severance payment to employees was not preempted by ERISA. 482 U.S. at 12. The Court reasoned that although the one-time payment was a benefit, it was not a benefit plan: "The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* The Court further noted that "[t]o do little more than write a check hardly constitutes the operation of a benefit plan." *Id.*

As noted by the district court in the present case, on the other end of the spectrum lies *Bogue* in which the Ninth Circuit was faced with a severance program that provided benefits to executives who, in the event of a takeover, were not offered "substantially

9

equivalent" employment by the purchasing company. 976 F.2d at 1321. In order to implement the severance program, management was required to make case-by-case determinations of whether a complaining employee's job was "substantially equivalent" to his pre-acquisition job. *Id.* at 1323. The Ninth Circuit concluded that the plan was covered by ERISA. The court noted: "Although the program, like the plan[] in *Fort Halifax, . . .* was triggered by a single event, that event would occur more than once, at a different time for each employee. There was no way to carry out that obligation with the unthinking, one-time, nondiscretionary application of the plan [as did the] administrators in *Fort Halifax. . . .*" *Id.* Therefore, the court concluded that the company "was obligated to apply enough ongoing, particularized, administrative, discretionary analysis to make the program in this case a 'plan.'" *Id.*

Similarly, in **Perdue v. Burger King Corporation,** this Court concluded that the "Burger King Job Elimination Program" was governed by ERISA because it required an administrative scheme for it to function. 7 F.3d 1251, 1252 (5th Cir. 1993). Burger King initiated the elimination program to ease the impact on its employees as part of an internal reorganization plan to eliminate several management tiers. *Id.* The program provided a three-year period from the date of implementation in which any full-time employee who lost his job as a result of a job elimination plan or

10

reduction in workforce was entitled to receive certain severance benefits. *Id.* This Court concluded that the plan was governed by ERISA because it was "in effect for three years, applied to two nation-wide personnel reorganizations, and required an 'administrative set-up' to monitor and facilitate provision of benefits." *Id.* at 1253 n.5.

Notably, severance plans that provide certain benefits over a period of time do not necessarily require an ongoing administrative scheme. For example, in *Fontenot v. NL Industries, Inc.,* a "golden parachute" agreement that required payments over a three-year period rather than a lump-sum payment was found not to be governed by ERISA. 953 F.2d 960 (5th Cir. 1992). In *Fontenot,* NL Industries was the target of a takeover. *Id.* at 961. In order to block any takeover attempts, NL Industries instituted the NL Senior Executive Severance Plan. *Id.* The plan provided that if an executive was terminated within two years of a change of control, the company would pay the executive a lump sum cash payment of three times his highest annual compensation for the preceding three years and a three year continuation of "certain" benefits. *Id.* Even though the plan required three years of payments, this Court concluded: "NL Industries' severance plan involves 'a one-time lump sum payment triggered by a single event . . . that may never materialize,' it 'requires no administrative scheme whatsoever to meet the employer's obligation,' and '[t]he employer assumes no

11

responsibility to pay benefits on a regular basis.'" *Id.* at 962 (quoting *Fort Halifax,* 482 U.S. at 12).

Furthermore, even though benefit funds are paid out of the general assets of a company instead of a separate fund, the benefit plan can still be governed by ERISA. *Fort Halifax,* **482 U.S.** at 17-18 (citing **Holland v. Burlington Indus., Inc.,** 772 F.2d 1140 (4th Cir. 1985) and **Gilbert v. Burlington Indus.,Inc.,** 765 F.2d 320 (2d Cir. 1985)). In **Fort Halifax,** the Supreme Court indicated that the inquiry should not necessarily be where the funds are coming from, but whether severance benefits are being paid pursuant to a plan. *Id.* at 18. As the Court stated: "[I]f an employer has an administrative scheme for paying benefits, it should not be able to evade the requirements of the statute merely by paying those benefits out of general assets." *Id.*

The district court was correct in concluding that the present case resembles **Fort Halifax** more than **Bogue.** Marine Chartering's ERHCP offered Appellees the choice of a lump-sum payment or a stream of payments until they reached the age of 62. Regardless of how Appellees chose to receive those payments, the total amount to be paid was based on a one-time calculation using a fixed formula. Under the formula, age (which must have been a minimum of 55) is added to the number of years of service (which must have been at least 15 years). Appellees then received a percentage of what they would normally receive in Social Security based on the total number

12

arrived at through the above calculation. Significantly, Appellees provide no evidence that the ERHCP requires an administrative scheme to make ongoing discretionary decisions based on subjective criteria. And, as this Court held in **Fontenot,** simply because Marine Chartering offered Appellees the option of receiving that payment over a period of time does not mean that the ERHCP amounts to an administrative scheme. 953 F.2d at 961; *see also* **James v. Fleet/Norstar Financial Group, Inc.,** 992 F.2d 463, 466 (2d Cir. 1993) (finding that employee's option to receive a one-time payment in bi-weekly installments rather than in a lump sum did not impact the court's decision that the severance plan was not controlled by ERISA). To the contrary, writing a check each month is hardly an administrative scheme. **Fort Halifax,** 482 U.S. at 12.

The district court, therefore, correctly found that the ERHCP under which Appellees claim benefits is not governed by ERISA. As a result, the district court properly concluded that federal subject matter jurisdiction does not exist: "Where federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." **Kulinski v. Medtronic Bio-medicus, Inc.,** 21 F.3d 254, 256 (8th Cir. 1994); *accord* **Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,** 904 F.2d 236, 240 (5th Cir. 1990) (noting the question of whether an ERISA plan exists is "a jurisdictional one").

13

## CONCLUSION

Accordingly, we AFFIRM the district court's final judgment and order dismissing without prejudice the action of Appellees. Because we conclude that there is no federal subject matter jurisdiction, we need not reach the issues raised by Marine Chartering concerning whether the district court erred in denying Marine Chartering's motion for summary judgment or whether Marine Chartering is entitled to recover reasonable attorney's fees and costs.

**AFFIRMED.**