BENAVIDES, Circuit Judge:
Appellant William H. Peace, a citizen of the United Kingdom, appeals the district court’s denial of his summary judgment motion and grant of Appellee Halliburton Company’s (“Halliburton”) summary judgment motion. The court held that Peace’s breach of contract claim was preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (“ERISA”). It treated that claim as a nonpayment of benefits under ERISA. We disagree and hold that Peace’s claim is not preempted by ERISA. For the reasons set forth below, we vacate the district court’s judgment and remand the case.

I. Factual Background and Procedural History

On January 12, 2004, Peace sued Halliburton and American General Life Insurance Company (“American General”) in the state district court of Harris County, Texas for breach of contract.[1] Halliburton subsequently removed the case to the United States District Court for the Southern District of Texas. On November 29, 2004, Peace and Halliburton filed motions for summary judgment. The district court granted Halliburton’s and denied Peace’s motions for summary judgment. Peace timely appeals.
In 1984, Peace was the general manager of the Westinghouse synthetic fuels division. At that time, Kellogg Rust, Inc. (“Kellogg Rust”), a predecessor in interest of Halliburton, purchased Westinghouse’s synthetic fuels division. Peace alleges that Kellogg Rust induced him to remain with the division by agreeing “to purchase an annuity to replace the pension amount” he would lose by leaving Westinghouse. Kellogg Rust purchased a joint, single-premium annuity from American General and *439 retained ownership of the annuity until 1987 when ownership was transferred to Peace. Peace claims he was promised a monthly amount of $1155 when he became age sixty-five. Allegedly relying on this agreement, he stayed on as general manager and became vice-president of the division. He attained the age of sixty-five in August 2003. Peace has requested that his monthly payments begin but has not received any money.
The district court held that the annuity was an employee benefit plan under ERISA. Looking to whether a plan existed, the court applied the Supreme Court’s ongoing administrative scheme test and concluded that such an administrative scheme existed. See Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). The court noted that Halliburton (1) considered the type of investment vehicle to utilize; (2) calculated the amount to invest; (3) perused the market; (4) purchased the annuity; (5) monitored the annuity value;[2] and (6) eventually would have had to make regular payments. The court concluded that these activities constituted an administrative scheme on the part of Halliburton in providing the annuity benefit. Looking to the same facts, we come to the opposite conclusion. We hold that no administrative scheme existed, and therefore Peace’s claims are not preempted by ERISA.

II. Standard of Review

This Court reviews summary judgments de novo in ERISA cases, applying the same standards as a district court. See Baker v. Metropolitan Life Ins., 364 F.3d 624, 627-28 (5th Cir.2004).

III. Discussion

Under ERISA, the terms “ ‘employee pension benefit plan’ and ‘pension plan’ mean any plan, fund, or program which was ... established or maintained by an employer [that provides] retirement income to employees.” 29 U.S.C. § 1002(2)(A). We utilize the three-factor test set out in Meredith v. Time Ins., 980 F.2d 352, 355 (5th Cir.1993), for determining whether an employee benefit arrangement is an ERISA plan.[3] We consider whether: (1) the plan exists; (2) the plan falls within the safe-harbor provision established by the Department of Labor; and (3) the employer established or maintained the plan with the intent to benefit employees. Id. at 355. “If any part of the inquiry is answered in the negative, the submission is not an ERISA plan.” Id. Here, we do not proceed further than the first inquiry because we conclude that no plan existed.
*440 A. Requirement of an Ongoing Administrative Scheme to Effectuate a Benefit Plan
An employee benefit encapsulated in an ERISA plan differs from a stand-alone employee benefit. The Supreme Court created the distinction between mere stand-alone benefits and full-fledged plans after examining the purpose of ERISA. See Fort Halifax, 482 U.S. at 9, 11-12, 107 S.Ct. 2211. According to the Court, Congress implicitly recognized that an employer must “establish a uniform administrative scheme” to effectuate a “host of [employee benefit] obligations.” Id. at 9, 107 S.Ct. 2211. ERISA enables an employer to establish and maintain one scheme instead of developing numerous systems, each congruent with individual state regulations. See id. at 9, 11, 107 S.Ct. 2211. Given that purpose, the Court concluded that only when there is an “ongoing administrative program to meet the employer’s obligation” does a plan exist under ERISA. Id. at 11, 107 S.Ct. 2211. Where no such administrative scheme exists, preemption is nonsensical because there would be nothing to regulate. See id. at 16, 107 S.Ct. 2211.
B. No Ongoing Administrative Scheme
Following Fori Halifax, we consider whether Halliburton was engaged in an ongoing administrative scheme to determine whether a plan existed.[4] See, e.g., Fontenot v. NL Industries, 953 F.2d 960 (5th Cir.1992). As evidence of ongoing administrative activities, Halliburton states that it: (1) chose a funding mechanism, (2) calculated the required contributions to the annuity, (3) shopped for and purchased the annuity, and (4) ensured the eventual payment of benefits. The first three activities all took place before or at the time of purchase. They were not continually choosing a funding mechanism, calculating required contributions or shopping for and purchasing the annuity. Moreover, Halliburton’s discretionary decision-making process for choosing a funding mechanism “has nothing to do with how the ‘plan’ is administered once the company decides to put it in place.” Nelson v. GMC, 1998 WL 415993, 1998 U.S.App. LEXIS 15401 (6th Cir. July 7, 1998) (unpublished).[5] Similarly, the fourth activity was executed only if payment was triggered — i.e., Peace turned sixty-five. Each of these activities was performed only once or over a brief period of time and never performed again. Therefore, these were not part of an ongoing administrative scheme.[6]
The lack of ongoing administrative activity makes this single-premium annuity benefit akin to a one-time severance benefit. This Court has held that one-time severance payments do not constitute an employee benefit plan under ERISA. See, e.g., Wells v. General Motors Corp., 881 F.2d 166, 176 (5th Cir.1989) (holding that *441 one-time lump payment was not a plan even where employees could elect a two-year installment payment option). We have concluded that a one-time lump sum payment, contingent upon an event that may never materialize, “create[s] no need for an on-going administrative program to process claims and pay benefits” and therefore is not a plan. Fontenot, 953 F.2d at 961. In this case, Halliburton made a one-time payment into an annuity, after which there was no subsequent demand on its assets. Cf. Cassidy v. Akzo Nobel Salt, Inc., 308 F.3d 613, 616 (6th Cir.2002) (holding that a plan may be an ERISA plan if the delivery of its benefits creates an on-going demand on the employer’s assets). The eventual payment of the benefit was contingent upon Peace reaching the age of sixty-five-years-old, an event which may not have materialized. See Fontenot, 953 F.2d at 961.
This case most closely resembles Tinoco v. Marine Chartering Co., 311 F.3d 617 (5th Cir.2002). In Tinoco, the company established a health care benefit for employees who elected to voluntarily retire early. Id. at 618. Subsequently, the company was sold, and some employees received the benefit as a severance benefit. Id. at 619. Notably, the benefit was available either as a lump-sum payment or a “stream of payments.” Id. at 622. The Tinoco Court held that the pre-determined benefit, even when paid over time, did not amount to an administrative scheme. Id. Here, Halliburton purchased a single-premium annuity, which guaranteed a predetermined amount after a certain number of years, and it made no additional payments on the annuity. If the trigger event materialized, the benefit was to be paid out by American General (not Halliburton) on a monthly basis. See Fort Halifax, 482 U.S. at 12, 107 S.Ct. 2211 (“To do little more than write a check hardly constitutes the operation of a benefit plan.”) In short, the theoretical possibility that Halliburton would “ensure” that American General sent checks each month from the monies accrued on a single-premium annuity does not require the creation of an ongoing administrative program.[7]
Halliburton argues that, as owner of the annuity for a brief period of time, it could have made various discretionary decisions. However, it is insufficient to provide a benefit and then create an unnecessary administrative scheme around it to invoke ERISA. The Supreme Court clearly has stated that a “need” for such scheme must be created. See Fort Halifax, 482 U.S. at 11-12, 107 S.Ct. 2211 (stating that the legislative concern for regulatory uniformity “only arises ... with respect to benefits whose provision by nature requires an ongoing administrative program.... [A] one-time obligation in the future simply creates no need for an ongoing administrative program ....”) (emphasis added). Halliburton was not required to create an administrative scheme to provide the annuity benefit. See Tinoco, 311 F.3d at 622 (“Appellees provide no evidence that the [plan] requires an administrative scheme *442 to make ongoing discretionary decisions based on subjective criteria.”) (emphasis added). Therefore, the fact that Halliburton could have developed an unnecessary administrative scheme or performed unnecessary, ongoing administrative tasks is irrelevant to our analysis.
Finally, Halliburton, in a footnote, states that its “alleged agreement to provide Peace ... with deferred compensation in the form of a single premium annuity qualifies as a ‘top hat’ plan under ERISA,” citing 29 U.S.C. § 1101(a)(1). We decline to address Halliburton’s assertion because it is inadequately briefed; Halliburton fails to explain how the annuity qualifies as a “top hat” plan. See Peavy v. WFAA-TV, 221 F.3d 158, 176 (5th Cir.2000) (“This issue, raised in a footnote, is not adequately briefed.”) (emphasis in original).
ERISA preempts “any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.” 29 U.S.C. § 1144(a) (2000). Here, we have determined that no employee benefit plan is at issue. Therefore, Peace’s benefit claim is not governed by ERISA. See Tinoco, 311 F.3d at 623.[8]

TV. Conclusion

The district court erred in holding that a plan existed for purposes of ERISA. Halliburton has failed to offer evidence of an ongoing administrative scheme to effectuate the annuity benefit. Therefore, no employee benefit plan exists. Accordingly, Peace’s claims are not preempted by ERISA.
The district court’s judgment is VACATED, and the case is REMANDED for further proceedings.

. Peace voluntarily dismissed his claim against American General.

. The district court does not explain how or when Halliburton monitored the annuity value. It merely cites the annuity contract. Because Halliburton, on appeal, does not claim that it monitored the annuity value and it does not offer evidence of any monitoring, we do not consider this particular activity.

. Citing Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 20-21, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004), the dissent argues that we also should consider an ERISA regulation — 29 C.F.R. § 2510.3-3(a) (2003) — to determine whether a benefit plan was created by Halliburton, an argument not presented by Halliburton. The majority does not quarrel that an applicable Department of Labor advisory opinion (or regulation) merits consideration and deference. This regulatory provision describes certain circumstances in which a benefit guaranteed by an insurance contract or certificate is no longer a plan. This list of scenarios, however, does not represent an exhaustive list of contexts in which there is no longer a plan. Moreover, the inquiry is not when a plan ended. Instead, we must decide whether any plan existed at all. To make this determination, we follow the clear standards set forth by this Court and the Supreme Court and advanced by the parties to this appeal.

. Halliburton appears to question whether Fort Halifax applies in a nonseverance benefit context. Halliburton's concern is unfounded. Fort Halifax has guided courts in cases involving nonseverance benefits. See, e.g., Williams v. Wright, 927 F.2d 1540, 1545 (11th Cir.1991) (using Fort Halifax to assess whether a retirement and fringe benefits agreement was a plan).

. The Sixth Circuit issued its affirmance without its reasoning in a published decision. See Nelson v. GMC, 156 F.3d 1231 (6th Cir.1998).

.Halliburton fails to allege any additional responsibilities with respect to the annuity. See, e.g., Schonholz v. Long Island Jewish Medical Ctr., 87 F.3d 72, 76 (2d Cir.1996) (citing Bogue v. Ampex Corp., 976 F.2d 1319, 1323 (9th Cir.1992)) (stating that whether the "obligation require[d] managerial discretion in its administration” is a factor for the court’s review when determining which undertakings are complex enough to require an ongoing administrative program).

. The only noteworthy difference between Ti-noco and the instant case is that Halliburton made its one-time payment to a third party which then would make regular payments to Peace. Whereas, the employer in Tinoco made a one-time payment or a series of payments directly to the employees. That said, this difference is not material. Here, whether the employee received the payment directly and when the payment was made in connection to the provision of the benefit are not two inquiries that impact this Court's determination. For example, Halliburton, like the Marine Chartering Company in Tinoco, could have agreed to provide Peace with a lump sum payment (or payments over time) instead of purchasing an annuity long before the trigger event. Either way, we would examine whether an ongoing administrative scheme existed to provide the payment(s).

. Because the court concluded that Peace's claim was preempted by ERISA, it only performed the statute of limitations analysis within the context of an ERISA claim. The court did not address the statute of limitations for a breach of contract claim. The date of the action's accrual may vary depending on the type of limitations analysis being performed. Therefore, we vacate and remand the statute of limitations question for further consideration in light of this opinion.