# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2013

Lyle W. Cayce
Clerk

No. 12-60503

JIMMY PARKER,

Plaintiff - Appellant,

v.

COOPER TIRE AND RUBBER COMPANY,

Defendant - Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:10-CV-172

Before ELROD and HIGGINSON, Circuit Judges, and JACKSON, District Judge.[*]

BRIAN A. JACKSON, District Judge:[**]

## I.

This dispute arises out of the termination of Appellant, Jimmy Parker ("Parker"), from his employment with Appellee, Cooper Tire and Rubber Company ("Cooper Tire"), a North American tire manufacturer. Parker was

---

[*] Chief Judge of the Middle District of Louisiana, sitting by designation.
[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60503

employed with Cooper Tire at its plant in Tupelo, Mississippi, for approximately ten years prior to his termination. In November 2007, Parker was hospitalized with flu-like symptoms and missed several days of work. A month later, Parker was hospitalized again and diagnosed with cirrhosis, which caused liver failure. Throughout this time, Parker claims that, to the extent he was able, he notified Cooper Tire on days when he was unable to work due to his disability. On the other hand, Cooper Tire claims that Parker failed to report his absences on various occasions in accordance with Cooper Tire's notification policy.

Beginning on November 14, 2007, Parker failed to report for his scheduled shifts at Cooper Tire. On November 14, 15, and 19, Parker failed to report for his shifts, but followed the proper policy in reporting his absences. On November 20, 24, and 25, Parker was hospitalized and failed to report for his shifts or report his absences. However, Cooper Tire did not classify these days as "no reports," and retroactively paid Parker sick pay for his absences earlier that month. On November 28, Parker's wife called Cooper Tire to report that Parker would miss that day and the following day, November 29. Parker himself did not report these absences. Parker then reported an absence on November 30, but was informed that he was not scheduled to work that day. On December 3, Parker called to report an absence for the following day, but he was told to call back the morning of December 4 if he would miss his shift that day. Parker was then absent for his shift on December 4, but did not call to report the absence. On December 7, Parker called his supervisor to report that he was in the hospital. Parker was released from the hospital on December 10. On December 12, Parker's health care provider submitted a form pertinent to Parker's absences from December 7–12 under the Family Medical Leave Act ("FMLA").

2

No. 12-60503

In summary, it appears that Parker complied with Cooper Tire's notification policy on most occasions, but violated the policy by failing to personally report his absences on November 28, November 29, and December 4, 2007.[1] On December 20, 2007, Parker delivered to Cooper Tire a letter from his treating physician, Dr. Daryl Schroader, stating that Parker had "severe and possibly end-stage liver disease" and that he would require a liver transplant in order to recover. Dr. Schroader wrote that Parker was "at least temporarily, totally disabled from doing any meaningful manual work." The next day, December 21, 2007, Cooper Tire terminated Parker for failing to report his absences on November 14, 15, and 20, 2007, in accordance with Cooper Tire's "three unreported absences [in a 12-month period] rule."

On January 4, 2008, Cooper Tire sent Parker a letter "attempting to correct the 'no report' days." Specifically, the January 4 letter stated that Parker actually failed to report on November 28, November 29, and December 3, 2007. On January 31, 2008, Cooper Tire held a peer review of Parker's termination, during which Parker's supervisor testified that this second batch of "no report" days was also incorrect because Parker had failed to report an absence on November 20. Additionally, the Power Point presentation shown during the peer review session provided that Parker actually failed to report on December 4, 2007, not December 3.

On May 12, 2010, Parker sued Cooper Tire in Mississippi state court, claiming he was wrongfully terminated in violation of state and federal law.

---

[1] Cooper Tire asserts that under its attendance policy, "it is the responsibility of the employee himself" to report an absence.  Thus, even if Parker's wife notified Cooper Tire of Parker's absences on November 28 and November 29, 2007, such notification did not satisfy the requirements of its attendance policy. Parker does not contest this point. In any event, our analysis of this matter does not turn on whether Cooper Tire's attendance policy requires notification of an absence by the employee himself, and thus we may assume without deciding that Parker failed to comply with Cooper Tire's attendance policy on November 28, November 29, and December 4, 2007.

According to Parker, Cooper Tire fired him to avoid paying costs associated with his medical treatment—among other things, a liver transplant—in violation of his rights under the FMLA and the Americans with Disabilities Act ("ADA"). Parker further alleged various state law tort claims. Cooper Tire removed the action to federal court in the Northern District of Mississippi. Parker eventually conceded that each of his claims, except for his claims under the FMLA, should be dismissed.

Parker then retained new counsel, and filed an amended complaint. The amended complaint alleged Parker's discharge was a willful violation of the FMLA, and that Cooper Tire terminated his employment in order to prevent Parker from collecting disability and medical benefits, in violation of the Anti-Retaliation Statute of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140. On February 17, 2012, Cooper Tire filed a motion for summary judgment on Parker's remaining claims under FMLA and ERISA. In his response, Parker conceded his FMLA claim should be dismissed, leaving only his ERISA claim. The district court then granted Cooper Tire's motion for summary judgment, dismissing Parker's claim under the ERISA Anti-Retaliation Statute.

The district court split Parker's ERISA claim into two parts: (1) his claim for long-term disability benefits, and (2) his claim for short-term disability benefits. As to the long- and short-term benefit plans, the district court found that Parker failed to establish a *prima facie* case under ERISA because he failed to show that Cooper Tire terminated him with a "specific intent to interfere with his ability to obtain ERISA benefits to which he would become entitled."

Regarding Parker's claim for long-term benefits, the court found that Parker never applied for such benefits even though he had: (1) opted to enroll

in the long-term disability plan provided by Cooper Tire through The Hartford Insurance Company, and (2) was eligible to apply. According to the district court, Parker's failure to apply for long-term benefits was fatal to his claim because he "[could not] show he was entitled to receive, or would have been entitled to receive, benefits under the long-term disability plan . . . ." Thus, Parker could not show that Cooper Tire, when terminating him, had the specific intent to retaliate against him for exercising a right under the plan, or to interfere with his rights under the long-term disability plan.

The district court next found that the short-term disability plan was not an "ERISA plan" because it was excluded from ERISA coverage by the Department of Labor's payroll practice safe-harbor provision, 29 C.F.R. § 2510.3–1. Finally, although acknowledging that Parker's complaint alleged that "Cooper Tire discharged him to prevent him from drawing . . . medical benefits in violation of [ERISA]," the district court failed to discuss whether Parker was entitled to relief on this basis. We address Parker's claims under each of Cooper Tire's three plans.

## II.

Our review of the district court's grant of summary judgment is *de novo*, and we apply the same standard as the district court. *Travelers Cas. & Sur. Co. of Am. v. Baptist Health Sys.*, 313 F.3d 295, 297 (5th Cir. 2002). A district court properly grants summary judgment if, upon viewing the facts in the light most favorable to the non-moving party, the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a reasonable jury could return a verdict for the non-moving party. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011). Once the moving party points

to an absence of proof on claims as to which the non-movant has the burden of proof, the non-movant must present probative evidence demonstrating the existence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party may not rely on general allegations and denials, but must provide significant probative evidence demonstrating the existence of a triable issue of fact. *See id.* at 324.

Section 510 of ERISA, also known as the "Anti-Retaliation Statute," provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary [of an employee benefit plan protected by ERISA] for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.

To bring a claim under Section 510, a plaintiff must first establish a *prima facie* case. *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997). A *prima facie* case of discriminatory retaliation under ERISA requires proof that the employer terminated the plaintiff "in retaliation for exercising an ERISA right or to prevent attainment of benefits to which he would have become entitled under an employee benefit plan." *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 423 (5th Cir. 2007) (quotation marks omitted). An essential element of a claim for retaliation under Section 510 is proof of the employer's "specific discriminatory intent." *Id.*

If a plaintiff establishes a *prima facie* case, the burden shifts to his employer to present a legitimate, nondiscriminatory reason for the alleged discriminatory conduct. *See Stafford*, 123 F.3d at 295. If the employer states a legitimate, nondiscriminatory reason for discharging the plaintiff, the burden

shifts back to the plaintiff to show that the employer's articulated reason for the termination is a mere pretext for discrimination. *Id.*

## A. *Long-Term Disability Plan*

Parker first challenges the district court's dismissal of his claim that Cooper Tire terminated him to avoid paying his long-term disability benefits. The district court dismissed this claim because although it is "undisputed that Cooper Tire's long-term disability plan is an ERISA plan," Parker "fail[ed] to show that he would have been entitled to [long-term] benefits" under that plan, and, thus, Parker could not show that Cooper Tire fired him to avoid paying such benefits. Specifically, the district court concluded that Parker could not establish that he was entitled to long-term disability benefits because he failed to apply for them *prior* to his termination.

We agree with the district court that Parker's failure to apply for long-term ERISA benefits, even though he was enrolled in the long-term benefit plan, is fatal to his retaliation claim. However, we disagree with the reasoning the district court employed to reach this conclusion. In its analysis, the district court explained that Parker had the opportunity to apply for long-term disability benefits and that his termination *caused* him to lose this opportunity.[2] The language of Cooper Tire's long-term disability plan does not support the district court's conclusion.

It is true that if Parker became disabled *after* he was terminated, he would not have been eligible for benefits under Cooper Tire's long-term benefit plan.[3] However, if Parker became disabled *prior* to his termination, his

---

[2] Specifically, the district court stated: "Because the employee's eligibility period ends upon the employee's termination, he must apply for long-term disability benefits prior to his termination."

[3] Cooper Tire's long-term benefit plan provides, in relevant part: "Your coverage will end on . . . the date Your Employer terminates Your employment . . . ."

subsequent termination would not impact his ability to recover benefits for the disability that arose during his period of coverage under the plan.[4] Although the parties disagree as to the exact date that Parker's disability arose,[5] it is undisputed that it arose prior to his termination. Thus, under the terms of the long-term disability plan, Parker's termination did not result in a lost opportunity to apply for benefits under the plan.

Nonetheless, Parker's claim still fails because, on the existing record, it appears that Parker never applied for long-term benefits. Accordingly, Parker cannot establish a *prima facie* case because, on these facts, Cooper Tire could not have terminated Parker with the specific intent to retaliate against him for exercising a right under the long-term plan, or to interfere with the attainment of his rights under the long-term plan. *See* 29 U.S.C. § 1140; *Custer*, 503 F.3d at 423.

### B.  Short-Term Disability Benefits

The same burden-shifting framework applies to our review of Parker's claim that Cooper Tire discharged him in an effort to avoid paying short-term disability benefits. *See Stafford*, 123 F.3d at 295. But whereas the parties agree that Cooper Tire's long-term disability benefit plan is an ERISA plan, they dispute whether Cooper Tire's short-term disability plan is a qualifying "plan" under ERISA. Indeed, the district court dismissed Parker's "ERISA claim

---

[4] Cooper Tire's plan states: "We will pay You a Monthly Benefit if You . . . become Disabled while insured under The Policy . . . ."

[5] The date Parker's disability originated is unclear. In August 2008, the Social Security Administration ("SSA") determined his date of disability to be November 20, 2007, which is a little more than one month prior to his termination. The district court pushed forward in its ruling without finding the exact date that Parker became disabled, and Cooper Tire asks this Court to rely upon the SSA's determination that Parker's date of disability was November 20 and, consequently, to find that Parker failed to comply with the 30-day notification rule as provided in Cooper Tire's long-term benefit plan. Because this discrepancy is not essential to our holding, we do not address it.

concerning the short-term disability plan" because "Cooper Tire's short-term disability plan is not an ERISA plan."

This court uses a three-prong test to determine whether an employee benefit plan qualifies as an ERISA plan. "We consider whether: (1) the plan exists; (2) the plan falls within the safe-harbor provision established by the Department of Labor; and (3) the employer established or maintained the plan with the intent to benefit employees." *Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006).

At the outset, Parker does not dispute the district court's determination that, standing alone, Cooper Tire's short-term disability plan is *not* an ERISA plan.[6] Nevertheless, Parker argues that his short-term benefits claim withstands summary judgment because the district court's assessment of Cooper Tire's short-term benefit plan "fail[ed] to recognize the fact that the short-term disability payments are only one part of an overall employee benefit plan, and that the overall benefit plan is subject to ERISA protection." In effect, Parker asks us to view the long- and short-term disability benefit plans "as a whole," and to find that the plans, when considered together, are subject to ERISA protection. In support of this position, Parker cites to the First Circuit's opinion in *McMahon v. Digital Equipment Corporation*, 162 F.3d 28 (1st Cir. 1998).

We decline to adopt Parker's holistic approach for determining whether Cooper Tire's short-term disability benefit plan is an ERISA plan because our

---

[6] The district court determined that Cooper Tire's short-term disability benefit plan is not an ERISA plan because it is funded solely from Cooper Tire's general assets, and is not listed as an ERISA plan with the Department of Labor, and therefore falls within the payroll-practices exemption. *See Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008) ("[I]f an employer does no more than purchase insurance for its employees and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, the employer has not established an ERISA plan.").

case law establishes that the plan fell within the payroll-practices exemption.[7] *See Peace*, 462 F.3d at 439. Nor does the First Circuit's reasoning in *McMahon* compel us to deviate from the traditional standards for determining whether a benefit plan is an ERISA plan. The *McMahon* case addressed the question of whether the short-term disability benefits at issue derived from an ERISA plan or merely a company's "payroll practice." 162 F.3d at 31–32. This question was central to the outcome of the *McMahon* plaintiff's claim because if the plan fell within the payroll-practice exemption, the plaintiff's state law claims would not be preempted by federal law. *Id.* at 32. On the other hand, if the short-term benefit plan was an ERISA plan, then federal law would preempt her state law claims. *See id.* The court determined the short-term benefit plan was an ERISA plan because it was both listed by the employer as an ERISA plan with the Department of Labor, and it was funded by a separate trust, not by the employer's general assets. *Id.* at 34.

The issue presented in *McMahon*—whether the short-term benefit plan was an ERISA plan—is *not* in dispute in the instant case. As stated earlier, the district court found, and Parker concedes, that Cooper Tire's short-term benefit plan, standing alone, is not an ERISA plan because it falls within the payroll-practices exemption. *See Peace*, 462 F.3d at 439.

In sum, we decline to adopt a new standard for determining whether a disability benefit plan is an ERISA plan. Applying the legal standards set forth in our precedent, it is clear that Cooper Tire's short-term disability benefit plan is not an ERISA plan because it "falls within the safe-harbor provision

---

[7] We also note that the holistic approach Parker proposes is fraught with complicated and confusing consequences. For example, a non-ERISA short-term benefit plan could potentially transform into an ERISA-protected plan based upon an employee's choice to enroll in a long-term benefit plan. Additionally, short-term benefits would be protected by ERISA for some employees but not for others based upon whether they decide to enroll in long-term benefits. Finally, employees would be encouraged to enroll in long-term benefits to ensure their short-term benefits were ERISA-protected.

established by the Department of Labor." *Peace*, 462 F.3d at 439. That provision provides, in pertinent part, that an ERISA plan shall not include "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons." 29 C.F.R. § 2510.3–1(b)(2). Parker concedes that, standing alone, Cooper Tire's short-term disability benefit plan meets these criteria. Therefore, it cannot be the basis of an ERISA retaliation claim by operation of the safe-harbor provision.

## C.  Medical Benefit Plan

Cooper Tire also provides its employees with certain medical benefits, such as health insurance and payment of medical costs. Parker's final claim is that Cooper Tire fired him to avoid paying his medical benefits.

Cooper Tire's first response to this claim is that Parker "cannot state a prima facie case that his termination deprived him of medical benefits in violation of Section 510 because he was physically unqualified to hold the position." As stated, the district court did not address Parker's medical benefits claim. However, in rejecting Parker's other claims, the district court seemed to agree with Cooper Tire's position that Parker cannot demonstrate that he was qualified for his position at Cooper Tire at the time of his termination. Under Cooper Tire's theory of the case—and, evidently, the district court's—this fact is enough to defeat Parker's claim, even if Cooper Tire terminated Parker to avoid paying medical benefits to which he was entitled.

Certainly, "qualification for the position sought is an element of a *prima facie* ERISA claim." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 261 (5th Cir. 2001). Here, after the onset of his disability, it is undisputed that Parker was physically unable to perform his job at Cooper Tire. It would be patently

11

unfair to an employee in Parker's position, however, to expand the rule in *Holtzclaw* to preclude relief on Parker's claims, and we decline to do so here. In other words, when a current employee suffers a disability that (1) makes him unable to perform his job duties for a period of time; and (2) entitles him to benefits under a plan that qualifies as an ERISA plan, it would be unconscionable to require that employee—who, but for his new disability *was qualified* for his position—to demonstrate that he was qualified for his position at the time of his termination in order to prove a retaliation claim. If such a requirement were part of the employee's *prima facie* case, a disabled employee that was unable to perform his job for a period of time would never be able to establish a *prima facie* case of ERISA retaliation, even if it was otherwise undisputed that the employer terminated him solely to avoid paying ERISA benefits.[8]

As an initial matter, Cooper Tire does not argue, and has therefore abandoned the issue of whether its medical benefit plan qualifies as an ERISA plan. *See MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890, 895 (5th Cir. 1995). Assuming that Cooper Tire's medical benefit plan is an ERISA plan, we must determine whether Parker has established a *prima facie* case for retaliation, focusing particularly on whether he has demonstrated that Cooper Tire terminated him with specific intent to interfere with his rights under the medical benefit plan.

Parker's termination occurred the day after he provided Cooper Tire with a letter from his physician explaining that he needed a liver transplant. The

---

[8] This is not to say that an employee's inability to perform his job is irrelevant to the retaliation inquiry. For example, we may assume without deciding that an employee's inability to perform his employment duties could be a factor in assessing whether the employer had a legitimate, nondiscriminatory reason for the alleged discriminatory conduct, or whether the articulated reason is mere pretext for discrimination. This assessment occurs, however, only *after* the employee has made out a *prima facie* claim of retaliation. *See Stafford*, 123 F.3d at 295.

close timing between Cooper Tire's discovery of Parker's serious medical needs and his subsequent termination is circumstantial evidence that Cooper Tire terminated him with the specific intent to prevent Parker's attainment of ERISA benefits—specifically, employer-provided medical benefits—for purposes of Parker's *prima facie* case. *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1025 (5th Cir. 2011) ("[C]lose timing between the protected activity and adverse employment action may provide evidence of a causal link."); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."). Viewed in the light most favorable to Parker, the suspicious timing of his termination is sufficient to establish his *prima facie* case of ERISA retaliation.

Having established his *prima facie* case, the burden shifts to Cooper Tire to present a legitimate, nondiscriminatory reason for the alleged retaliatory conduct. *See Stafford*, 123 F.3d at 295. Cooper Tire claims that it fired Parker due to his unreported absences from work. Certainly, unexcused absences could be a legitimate, nondiscriminatory reason for termination.

Thus, the burden shifts back to Parker to show that Cooper Tire's articulated reason for his termination is a mere pretext for discrimination. *Id.* Here, we find that Parker has met his burden of showing pretext. Again, the close timing between Cooper Tire's discovery of Parker's severe disability requiring serious medical treatment and his subsequent termination factors into our analysis. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999) ("[Plaintiff's] termination followed so shortly after his claim to medical benefits that the jury could reasonably infer a retaliatory motive."). Also, as observed by the district court, Parker has provided additional evidence

establishing pretext. Cooper Tire's articulated reason for firing Parker was his failure to follow company procedures to report absences from work. However, Cooper Tire repeatedly changed its determination as to which dates Parker actually failed to report his absences. Cooper Tire's repeated inconsistency, in addition to efforts by Parker's family to report absences on Parker's behalf, are other factors lending support to Parker's argument that Cooper Tire's justification for his termination is pretextual. *See Nichols v. Lewis Grocer*, 138 F.3d 563, 568 (5th Cir. 1998) (stating that discrimination may be inferred from an employer's inconsistent explanations); *cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (explaining that false explanations can give rise to an inference of discrimination).

Taken together, and viewed in the light most favorable to Parker, the close proximity between Parker delivering the news that he required a liver transplant and Parker's termination, combined with Cooper Tire's inconsistent explanations for the dates that Parker failed to properly report his absences, is evidence sufficient to create a material issue of fact regarding whether Cooper Tire's proffered reason for terminating Parker was mere pretext. Therefore, Cooper Tire is not entitled to summary judgment on Parker's claim for retaliation based on his loss of medical benefits.

### III.

For these reasons, the district court's order granting Cooper Tire's motion for summary judgment is AFFIRMED in part and REVERSED in part. The case is REMANDED to the district court for further proceedings consistent with this opinion.