**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FOSTER RICH,
*Plaintiff-Appellant*,

v.

RALPH W. SHRADER; JOSEPH
E. GARNER; BOOZ ALLEN
HAMILTON, INC.,
*Defendants-Appellees.*

No. 14-55484

D.C. No.
3:09-CV-652-AJB-BGS

OPINION

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted March 7, 2016
Pasadena, California

Filed May 24, 2016

Before: Richard R. Clifton and Sandra S. Ikuta, Circuit
Judges, and Frederic Block, District Judge.[*]

Opinion by Judge Block

---

[*] The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Employee Retirement Income Security Act

The panel affirmed the district court's judgment in favor of the defendants on claims under ERISA and California state law, arising from an employment dispute.

Affirming the district court's summary judgment, the panel held that a claim for breach of an employment contract was barred by the four-year statute of limitations, Cal. Civ. Proc. Code § 337. The district court did not abuse its discretion in denying the plaintiff a third opportunity to amend his complaint.

Affirming the dismissal of ERISA claims, and agreeing with other circuits, the panel held that the employer's stock rights plan did not qualify as an employee pension benefit plan subject to ERISA under 29 U.S.C. § 1002(2)(A) because its primary purpose was not to provide deferred compensation or other retirement benefits.

## COUNSEL

Gregory A. Davis (argued), George Brandon, and Gregory T. Saetrum, Squire Patton Boggs LLP, Phoenix, Arizona, for Plaintiff-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

J. Scott Ballenger (argued), Everett C. Johnson, Jr., J. Christian Word, and Sarah A. Greenfield, Latham & Watkins LLP, Washington, D.C., for Defendants-Appellees.

## OPINION

BLOCK, District Judge:

Foster Rich appeals the district court's dismissal of his breach-of-contract and Employee Retirement Income Security Act ("ERISA") claims against Booz Allen Hamilton, Inc. ("BAH"), Ralph Shrader, and Joseph Garner, and its denial of his motion for leave to amend the complaint. We affirm and write principally to address the proper standard for evaluating what qualifies as an employee pension benefit plan under ERISA.

## I

Rich began working for BAH in 1987. On September 4, 2003, Rich's performance was evaluated by BAH. Ultimately, Rich's evaluation resulted in a recommendation that he begin the process of voluntary retirement.[1]

---

[1] The details of Rich's evaluation and the evaluation process are contained in sealed exhibits. Although that information would be relevant if Rich's claims were evaluated on the merits, it is not necessary for us to recount it here because our review of Rich's claims related to the evaluation process does not go beyond evaluating whether Rich filed his claim within the statute of limitations and whether the district court abused its discretion in denying Rich leave to amend.

On September 30, 2003, Rich discussed his evaluation and the recommendation that he retire with a BAH senior vice president. Rich was surprised by the recommendation, but facing the choice of retiring or risking termination, Rich retired from BAH on March 31, 2005.

Throughout his employment, Rich participated in BAH's Stock Rights Plan ("SRP"). The SRP operated in the following manner: BAH granted eligible employees the right to purchase BAH stock "at such times . . . in such amounts and to such [employees]" as determined in the "sole discretion" of the BAH Board of Directors. The receiving employee was required to exercise the stock rights within sixty days of the grant by, among other things, purchasing ten percent of the stock rights. On June 15 of each subsequent year, the employee would have the opportunity to purchase another ten percent of the initial grant of stock rights. In the event the employee failed to exercise the rights within sixty days of the initial grant or each June 15, "all unexercised rights that such [employee] may have . . . [would] be forfeited." Although SRP participants were "expected to hold their shares until they leave the firm," they were "not precluded from selling paid-up stock back to the Firm at any time." Shares earned through the SRP increased in value ten percent annually. In the event an SRP participant ceased being an employee of BAH "by virtue of retirement, disability, or death," BAH had the right to repurchase that employee's shares within twenty-four months after the end of his or her employment.

By the time of his retirement, Rich had accumulated 30,500 shares of BAH stock. On March 31, 2007, BAH exercised its right to repurchase all of Rich's shares for $4,507,900, or $147.80 per share.

In July 2008, BAH sold a portion of its business to The Carlyle Group (the "Carlyle Transaction"). Shareholders of BAH stock received $763 per share. Because Rich was no longer a BAH shareholder, he did not receive any compensation from the Carlyle transaction.

On April 1, 2009, Rich filed his original complaint in the district court against BAH and several individual defendants. He alleged RICO violations, securities fraud, breach of contract, and other claims. Seven months later, the district court granted Rich leave to file an amended complaint. The defendants moved to dismiss the first amended complaint, which the district court granted with prejudice with respect to some claims, without prejudice to the breach-of-contract claim and others, and granted Rich another opportunity to amend his complaint. Rich's second amended complaint added causes of action under ERISA related to the SRP.

The defendants again moved to dismiss, which the district court granted with respect to Rich's RICO, securities fraud, and ERISA claims. Regarding the ERISA claims, the district court determined that the SRP was not an employee pension plan and thus was not covered by the statute. With respect to the breach-of-contract claim, the district court noted that the alleged breach occurred over four years prior—the relevant statutory period—but the second amended complaint alleged facts that could allow tolling of the statute of limitations under the delayed-discovery rule.

Following the completion of discovery, the defendants moved for summary judgment on the breach-of-contract claim. Rich argued the claim was not time-barred regardless of whether the delayed-discovery rule applied because he was actually asserting a wrongful-termination claim, which under

California law accrues on the plaintiff's last date of employment. The district court rejected this "complete about-face," and granted summary judgment to the defendants because the breach-of-contract claim was time-barred. The district court subsequently denied Rich's request to amend the complaint.

## II

We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's determinations that (1) Rich's breach-of-contract claim is time barred, *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003), and (2) Rich's ERISA claims fail because the SRP is not covered by the statutory scheme. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). The district court's denial of Rich's motion for leave to amend the complaint is reviewed for abuse of discretion. *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1141 (9th Cir. 2015).

## A

Under California law, a breach of a written contract must be brought within four years of the date of the alleged breach. Cal. Civ. Proc. Code § 337; *Spear v. Cal. State Auto Ass'n*, 2 Cal. 4th 1035, 1042 (1992).

The district court held that Rich's breach-of-contract claim accrued in September 2003,[2] when BAH conducted the assessment of Rich's performance that allegedly violated

---

[2] It is not necessary to determine the exact date in September 2003 the breach occurred, because any date of that month would be outside the limitations period.

Rich's employment contract.  Because Rich did not file his original complaint until April 1, 2009, the district court considered the breach-of-contract claim untimely.

Rich argues that the statute of limitations should run from his last date of employment, March 31, 2005.[3]  The Supreme Court of California has made clear that when an employee alleges breach of contract based on a wrongful termination, the statute of limitations runs from the employee's last date of employment.  *Mullins v. Rockwell Int'l Corp.*, 15 Cal. 4th 731, 741 (1997); *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 491 (1996).

Here, however, Rich's second amended complaint alleges that under the terms of his employment contract, "BAH was obligated to *provide Rich with an assessment of his performance* that was based upon and consistent with the opinion and recommendation of numerous co-workers," and "BAH breached the employment contract *by failing to perform its obligation to provide Rich with an Assessment Review*."  Unlike the plaintiffs in *Mullins* and *Romano*, Rich does not allege that he was wrongfully terminated in breach of his employment contract.  *Cf. Mullins*, 15 Cal. 4th at 738 ("Mullins alleged that he was constructively discharged in breach of an implied contract."); *Romano*, 14 Cal. 4th at 488 ("[P]laintiff contends that [the] termination of his employment . . . violated the terms of an implied contract.").

---

[3] Cesar Chavez Day was celebrated in California on March 31, 2009. Cal Civ. Proc. Code § 135; Cal. Gov't Code § 6700(a)(6).  Therefore, all filings due by March 31, 2009, were timely if filed by April 1, 2009.  Fed. R. Civ. P. 6(a)(1)(C), (6)(c).

Moreover, Rich alleges that due to his negative review, his reputation was tarnished with both clients and colleagues, which left him no choice but to take the recommendation to retire.  As a result of retiring he was unable to participate in the lucrative Carlyle Transaction.  Rich's second amended complaint specified that these damages are "consequential" and stem from BAH's breach "by performing the faulty assessment process."

Accordingly, Rich's cause of action accrued in September 2003 and the filing of his complaint was untimely.  Rich's breach-of-contract claim is time barred.

**B**

Although Rich's claim is time barred, he asserts the district court abused its discretion by denying him leave to amend his complaint to properly fashion it as a wrongful termination claim.  He argues that it is well established that "[a]n amendment should be allowed where the factual situation is not changed even though a different theory of recovery is presented."  *Heay v. Phillips*, 201 F.2d 220, 222 (9th Cir. 1952) (alteration in original).  Indeed, the underlying facts of the complaint would have been unchanged had the district court granted Rich leave to amend.

However, when the district court has already afforded a plaintiff an opportunity to amend the complaint, it has "wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will [its] rulings be disturbed."  *Id.*; *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").  Rich has

already been afforded two opportunities to amend and is unable to show that the district court's order constitutes "gross abuse." *Heay*, 201 F.2d at 222.

In the first place, Rich's desire to recast his breach-of-contract claim in terms of wrongful termination appeared for the first time in his opposition to the defendants' motion for summary judgment—after almost five years of litigation—and when it was likely apparent to Rich that the delayed-discovery rule would not apply to his claim. *Cf. Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980) ("[T]he dismissal of plaintiff's amended complaint came after several years of proceedings. At some point, a party may not respond to an adverse ruling by claiming that another theory not previously advanced provides a possible grounds for relief and should be considered."). Moreover, Rich has known all of the underlying facts and theories he now wishes to allege since the commencement of the litigation. *Cf. Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." (alteration in original)).

While Rich did cite *Mullins* in his opposition papers to the defendants' motion to dismiss in February 2011, the district court made clear in its order denying the motion in part that without the delayed-discovery rule Rich's claim would be time-barred because it accrued in September 2003. To the extent Rich believed the district court misinterpreted his breach-of-contract claim, he could have requested the opportunity to amend his complaint at that time. However, his motion for reconsideration of that order failed to mention the issue. Instead, he waited until January 2014, after years

of discovery and a grant of summary judgment for the defendants, to request leave to amend his complaint again.

The district court did not abuse its discretion by denying Rich a third opportunity to amend his complaint.

## C

ERISA coverage extends to employee pension benefit plans. A plan qualifies as an employee pension benefit plan if "by its express terms or as a result of surrounding circumstances such plan . . . (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A).

While what qualifies under § 1002(2)(A) appears to be a matter of first impression in this circuit, we agree with our sister circuits that have determined that the paramount consideration is whether the primary purpose of the plan is to provide deferred compensation or other retirement benefits. *See Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir. 1980) ("The words 'provides retirement income' patently refer only to plans designed for the purpose of paying retirement income whether as a result of their express terms or surrounding circumstances."); *see also Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 188–89 (3d Cir. 2003) (holding a plan was not an ERISA plan "because its purpose was to operate as an incentive and bonus program, and not as a means to defer compensation or provide retirement benefits"); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 931–34 (8th Cir. 1999) (focusing throughout its analysis on the "purpose" of the defendant company's stock plan).

The main purpose of the SRP was not to provide retirement or systematically deferred income. The SRP states that its purpose is "to provide incentives for [BAH] Officers to continue to serve as employees of the Company and its subsidiaries." A July 1995 memorandum to BAH partners explained: "[T]he stock program's purpose is to provide for the Firm's capital needs. Stock is not intended to be—and is not viewed by the Board as in fact being—an alternate form of compensation." This is consistent with BAH's stated philosophy and objectives regarding the SRP: "Stock is the single vehicle that provides for the orderly transition of ownership of [BAH] from one generation of Officers to the next," "[t]he long-term capital needs of [BAH] will be provided for by the Officers," and "[BAH] will not use other sources to fund long-term capital requirements." With respect to retirement income, BAH communicated to partners that the SRP "should not be viewed principally as an estate-building vehicle since equity returns will be modest. Liquidation of stock at retirement is a return of capital rather than a source of retirement income."

Rich attempts to establish that the SRP is a retirement plan by citing to a 2003 memorandum in which BAH's Chief Financial Officer stated: "The primary purpose of the stock program is to provide capital to the firm. The secondary purpose is to provide a wealth creation vehicle for the partners." But this memorandum does not help Rich. First, it further shows that the *primary* purpose of the SRP is not to provide retirement income or the deferral of compensation. Second, the memorandum—which was an explanation to SRP participants why BAH planned to reduce SRP stock distribution—demonstrates the breadth of discretion BAH enjoyed to alter the benefits distributed under the SRP. Indeed, under the terms of the SRP, BAH's Board of

Directors held "sole discretion" to "grant Stock Rights in such amounts and to such Officers as it determines." BAH's discretion further weighs against ERISA coverage. *See Oatway*, 325 F.3d at 189 ("Oatway's stock options were discretionary, given in recognition of special service, and awarded in addition to his regular compensation." (citing *Murphy*, 611 F.2d at 575–76)).

Rich also argues that the fact that SRP participants could hold their shares until the end of employment is "sufficient to establish ERISA coverage." He points to a recent Fifth Circuit opinion in which the court determined that a plan was covered by ERISA when employees had the "option to defer receipt of a portion of their compensation to be earned." *Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619, 625 (5th Cir. 2014) (internal quotation marks omitted). But the *Tolbert* court did not rely on that fact alone. *See id.* at 625–26. The plan in that case was referred to by the defendant company as a "deferred compensation plan" and its main purpose was to allow for the deferral of compensation. *Id.* at 626. Here, unlike in *Tolbert*, the SRP was never referred to by BAH as a deferred compensation plan, and its primary purpose, as discussed above, was not the deferral of compensation. Moreover, the mere possibility that income *can* be deferred does not mandate ERISA coverage. *See, e.g.*, *Emmenegger*, 197 F.3d at 933 ("Though the PSP's vesting requirement could result in the deferral of a portion of any earned incentive until a participant's termination or retirement, . . . such a deferral would only occur by happenstance. In fact, the stated purpose of the vesting requirement reinforces our conclusion that the PSP is a non-ERISA bonus plan.").

Accordingly, because the SRP was not designed or intended to provide retirement or deferred income, it is not covered by ERISA.[4]

### III

The judgment of the district court is

**AFFIRMED**.

---

[4] Rich appears to assert additionally that the district court abused its discretion by denying him leave to amend his complaint to bolster his ERISA claims, but this argument has no merit. As is discussed at length above, the district court has broad discretion to deny leave to amend a complaint when leave has already once been given. Even though Rich did not bring his ERISA claims until his second amended complaint, he was afforded two opportunities to amend his original complaint.