Filed 9/2/25  Gomez v. Bradford CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| TIBURCIO S. GOMEZ, JR., | C097809 |
| Plaintiff and Appellant, | (Super. Ct. No. CV24370) |
| v. | |
| PETER B. BRADFORD et al., | |
| Defendants and Respondents. | |

Plaintiff Tiburcio S. Gomez, Jr., filed a complaint against his former employers, defendants Peter B. Bradford, et al. (collectively, Bradford), stemming from an unfulfilled promise to make annual contributions to a retirement account in exchange for Gomez's continued employment.  Bradford moved for summary judgment, arguing that Gomez's claims are completely preempted by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.).  The trial court agreed and granted summary judgment on that basis.  Gomez appeals, contending that Bradford failed to meet its initial burden on summary judgment regarding the preemption issue.  We affirm the judgment.

1

BACKGROUND FACTS AND PROCEDURE

A.     *Gomez's Complaint*

Gomez worked as an employee on Bradford's farm for 52 years, from 1964 to 2016.  In February 2019, Gomez filed a complaint against Bradford, alleging causes of action for promissory fraud and breach of contract.  The complaint alleges the following facts:

In early 1976, to incentivize Gomez to continue working for the farm, Bradford promised to establish a retirement annuity account for Gomez and "make yearly contributions" to that account as part of Gomez's pay and benefits.  Gomez claims that he agreed to continue his employment with Bradford in reliance on Bradford's promise to open, maintain, and fund the retirement annuity.

In July 1976, Bradford presented, and Gomez signed,  an application for an annuity (contract no. 178472) from the Aetna Variable Annuity Life Insurance Company (Aetna), to be administered by the "Peter B. Bradford Self Employed Retirement Plan and Trust," (the Trust) with a stipulated annual contribution amount of $1,916.91.[1]  A true and correct copy of the annuity application is attached to the complaint.

Bradford funded the annuity account with an initial contribution of $1,916.91 in 1976.  Thereafter, no additional contributions were made to the account throughout the duration of Gomez's employment.

The complaint's first cause of action, for promissory fraud, alleges that despite promising to open, maintain, and fund the annuity account, Bradford did not intend to perform that promise.  As a result, Bradford fraudulently induced Gomez to continue as an employee.

The second and third causes of action, for breach of oral and written contract, allege that Bradford and Gomez entered into an agreement by which Bradford would

---

[1]     The complaint lists the amount as $1,976.91, an apparent typographical error.

2

make annual contributions to the retirement account in exchange for Gomez continuing to work for Bradford. Gomez alleges that while he performed his obligations under the agreement, Bradford breached the agreement by failing to make the annual contributions and concealing that information from Gomez.

B. *Removal and Remand*

In March 2020, after more than a year of litigation, Bradford filed a notice of removal of action under title 28 of the United States Code section 1441 (a). Bradford argued that the federal court has jurisdiction because Gomez's state law claims are completely preempted by ERISA.

In April 2020, Gomez filed a motion to remand arguing that (1) his claims do not fall within the scope of ERISA, and (2) the removal notice was untimely. In August 2021, the federal court granted Gomez's motion for remand, finding that removal was untimely.

C. *Motion for Summary Judgment*

In June 2022, Bradford filed a motion for summary judgment or, in the alternative, summary adjudication. As relevant here, the motion asserted that all of Gomez's causes of action are completely preempted by ERISA. In support of the motion, Bradford relied on Gomez's complaint and discovery responses, deposition testimony from Gomez and another former employee (Roger Schantz), and declarations from Peter Bradford and Robert Tamblyn.

In his declaration, Peter Bradford stated that he asked Harvey Ankley, an insurance agent, to help him set up the Aetna retirement plan in July 1976. Bradford stated that his intent in establishing the plan was to help three employees (Gomez, Schantz, and Bradford's wife) start saving for retirement. Bradford denied, however, that he promised to make annual contributions to the accounts.

Later, after incorporating his farming business, Bradford learned that the Aetna plan could not be transferred to the corporation under tax law. Thus, in 1992, Bradford

3

and Ankley met with Gomez and Schantz to establish new individual retirement accounts (IRA's) with Minnesota Mutual Life Insurance Company. Bradford and Ankley explained to Gomez and Schantz that the new accounts would be opened with a rollover of funds from the Aetna accounts; that the Aetna accounts would be closed; and that the business would not be making any other contributions to the IRA's.

Robert Tamblyn, a retired securities representative and principal, declared that the documents attached to Gomez's complaint appeared to be part of an application for a self-employed retirement plan with Aetna. Tamblyn stated that in the early 1980's, these types of plans were offered by mutual funds or insurance companies, using prototype or master-type documents. The plan documents were "pre-IRS approved" and required the completion of an "[a]doption [a]greement connected to a [p]lan document." "The business completed the [a]doption [a]greement by naming the business adopting the retirement plan as the plan sponsor and completing the blanks within the [a]doption [a]greement specifying certain requirements of the employees to be eligible to participate in the [p]lan, vesting schedule, stipulated normal retirement age plus other pertinent language including the way [the] plan was to be funded. The [a]doption [a]greement and [p]lan document . . . are. . . the primary reference on which the plan sponsor must rely for the proper maintenance and funding of the plan. Without the [a]doption [a]greement and [p]lan document, the type of plan and funding requirements (if any) are left to speculation."

Tamblyn declared that because the documents attached to Gomez's complaint do not include an adoption agreement or plan documents, he was unable to reach any definitive conclusions about what type of plan was intended, the vesting schedule for its participants, or how the plan was to be funded. Nevertheless, based on the information that was available, he stated that it "appears likely" that Bradford's plan was a profit-sharing plan, which would have allowed the plan sponsor (Bradford) to make an annual contribution to the plan in any amount, or no contribution at all.

4

In the summary judgment motion, Bradford argued that the undisputed material facts showed that the Aetna documents (attached to and incorporated in Gomez's complaint) were part of a broader agreement between Bradford and Gomez to establish a retirement annuity plan for Gomez. Bradford argued that the terms of the Aetna documents show the annuity was intended to be a profit-sharing plan, which allowed but did not require Bradford to make fixed annual contributions. In addition, Bradford argued that the agreement between the parties established an ERISA pension benefit plan, such that Gomez's causes of action are completely preempted by ERISA.

Gomez opposed the motion. Gomez argued that Bradford agreed to establish an employer-funded retirement account with mandatory yearly contributions. Gomez argued that although Bradford represented to him that the Aetna annuity was the retirement benefit promised to him, it was not. Rather, the Aetna account was a stand-alone benefit funded by a single lump-sum contribution. According to Gomez, Bradford never established the promised employer-funded retirement plan. Thus, Gomez argued he was not suing to recover benefits due under an ERISA employee benefit plan. He was suing to recover damages incurred due to Bradford's false promise and breach of agreement to provide an employer-funded retirement account with yearly contributions. To support his argument, Gomez relied on declarations and excerpts of deposition testimony from Gomez, Gomez's son, Gomez's attorney, Roger Shantz, and Peter Bradford.

D. *Order Granting Summary Judgment*

The trial court granted summary judgment, finding the following facts to be undisputed: (1) Bradford verbally agreed to establish and fund a retirement plan for Gomez in exchange for Gomez agreeing to continue working on the farm; (2) Bradford placed a sum of money into a variable annuity account with Aetna in furtherance of that promise; (3) Bradford promised to fund the retirement plan (at some level) each year; (4) the specifics of the retirement plan (e.g., whether it is a profit-sharing plan) are irrelevant;

5

(5) the Aetna annuity was owned and administered by the Trust established by Bradford; (6) after the initial deposit into the Aetna annuity account, Bradford made no additional contributions; and (7) in 1992, the Aetna annuity account was closed and the balance was rolled over into an IRA account. Based on these facts, the court concluded that Gomez's state law claims of fraud and breach of contract are based on alleged violations of an employee benefit plan subject to ERISA. Accordingly, the trial court granted summary judgment in favor of Bradford on the grounds that Gomez's state law claims are completely preempted under ERISA. Gomez filed a timely notice of appeal.[2]

DISCUSSION

I

*Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) Under the summary judgment law (Code Civ. Proc., § 437c, subd. (a)), any party to an action may move for summary judgment on a claim or defense. (*Aguilar,* at p. 843.) Generally, the court must grant the motion if the papers submitted show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

To meet the initial burden on summary judgment, a moving defendant generally must show, by admissible evidence, that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense thereto. (*Serri v. Santa*

---

[2]    At the parties' mutual request, we have augmented the record on appeal to include the November 7, 2022, Notice of Entry of Order and Judgment, which is attached to the civil case information statement filed in this court on February 15, 2023. (Cal. Rules of Court, rule 8.155 (a)(1)(A).)

6

*Clara University* (2014) 226 Cal.App.4th 830, 859.) Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or defense. (*Id*. at pp. 859-860.) In opposing the motion, the plaintiff may not simply rely upon the allegations or denials of the pleadings. (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201.) The plaintiff must set forth specific facts showing that a triable issue of material fact exists. (*Ibid*.) A genuine issue of material fact exists only if the evidence reasonably would permit a trier of fact, under the applicable standard of proof, to find the contested fact in favor of the party opposing the motion. (*Catholic Healthcare West v. California Insurance Guarantee Assn.* (2009) 178 Cal.App.4th 15, 23.)

On appeal from a grant of summary judgment, we independently review the record, applying the same process as the trial court to determine if there are genuine issues of material fact. (*Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1024.) In doing so, we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the party opposing summary judgment. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493-494; accord, *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067.)

II

*ERISA Preemption*

Gomez argues that the trial court erred in granting summary judgment because Bradford failed to meet the initial burden of establishing that Gomez's claims were preempted by ERISA. We disagree.

A.      *Applicable Principles of Law*

"ERISA is a comprehensive federal law designed to promote the interests of employees and their beneficiaries in employee pension and benefit plans." (*Marshall v. Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1050-1051 (*Marshall*).) ERISA's

7

primary goals are to protect employees from the abuse and mismanagement of funds accumulated to finance employee benefits and to protect employers from the threat of conflicting or inconsistent state and local regulation of employee benefit plans. (*McMahon v. Digital Equipment Corporation.* (1st Cir. 1998) 162 F.3d 28, 35-36.) In support of this second goal, ERISA includes expansive preemption provisions intended to ensure that employee benefit plan regulation is an exclusively federal concern. (*Aetna Health Inc. v. Davila* (2004) 542 U.S. 200, 208 (*Davila*).)

There are two strands of ERISA preemption: "complete preemption" under section 502(a) of ERISA (29 U.S.C. § 1132(a)), and "conflict preemption" under section 514(a) of ERISA (29 U.S.C. § 1144(a)). (*Port Medical Wellness, Inc. v. Connecticut General Life Insurance Co.* (2018) 24 Cal.App.5th 153, 171 (*Port Medical*); *Totten v. Hill* (2007) 154 Cal.App.4th 40, 50.)

Complete preemption under section 502(a) of ERISA (29 U.S.C. § 1132(a)) is " 'really a jurisdictional rather than a preemption doctrine.' " (*Marin General Hospital v. Modesto & Empire Traction Co.* (9th Cir. 2009) 581 F.3d 941, 945.) It "recognizes federal jurisdiction over what would otherwise be a state law claim, an issue that typically arises when the defendant has removed the plaintiff's state court lawsuit to federal court." (*Port Medical, supra*, 24 Cal.App.5th at p. 171.)

Complete preemption derives from the civil enforcement provisions in section 502(a) of ERISA, which, among other things, authorizes an ERISA plan participant or beneficiary to file suit "to recover benefits due . . . under the terms of his plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." (ERISA, § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)].) The United States Supreme Court has held that section 502(a) of ERISA, is one of those provisions with such "extraordinary pre-emptive power" that it " 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' [Citation.] Hence, 'causes of action within the scope of the civil

8

enforcement provisions of [section] 502(a) [are] removable to federal court.' " (*Davila, supra*, 542 U.S. at p. 209; accord, *Totten v. Hill, supra*, 154 Cal.App.4th at p. 51 [a completely pre-empted state law cause of action is, in reality, based on federal law].)

In *Davila*, the United States Supreme Court set forth a two-part test for determining when a state-law claim is completely preempted by ERISA. Complete preemption applies if (1) the plaintiff could have brought the claim under ERISA's civil enforcement mechanism (ERISA, § 502(a)), *and* (2) no other independent legal duty is implicated by the defendant's actions. (*Davila, supra*, 542 U.S. at p. 210; accord, *Fossen v. Blue Cross & Blue Shield of Montana, Inc.* (9th Cir. 2011) 660 F.3d 1102, 1107-1108.) When both conditions are met, state law claims are completely preempted. (*Davila,* at p. 209; *Marin General Hospital v. Modesto & Empire Traction Co., supra*, 581 F.3d at p. 946.)

Conflict preemption, in contrast, is an affirmative defense to a state law cause of action that entirely bars the claim. (*Port Medical, supra*, 24 Cal.App.5th at p. 172; *Morris B. Silver M.D., Inc. v. International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan* (2016) 2 Cal.App.5th 793, 799.) Conflict preemption is governed by section 514(a) of ERISA, which preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." (ERISA, § 514(a) [29 U.S.C. § 1144(a)].) The Supreme Court has identified two categories of state law claims that " 'relate to' " an ERISA plan: (1) claims that have a " 'reference to' " an ERISA plan; and (2) claims that have " 'an impermissible "connection with" ' " an ERISA plan. (*Depot, Inc. v. Caring for Montanans, Inc.* (9th Cir. 2019) 915 F.3d 643, 665 (*Depot, Inc.*).)[3]

---

[3]     A state law claim has a " 'reference to' " an ERISA plan if it " 'is premised on the existence of an ERISA plan' or if 'the existence of the plan is essential to the claim's survival.' " (*Depot, Inc., supra*, 915 F.3d at p. 665; *Gobeille v. Liberty Mutual Insurance Co.* (2016) 577 U.S. 312, 319-320.) " 'A [state law] claim has an impermissible

The question here is whether Gomez's claims are *completely* preempted under section 502(a)(1)(B) of ERISA. Complete preemption was the basis on which Bradford moved for summary judgment and the basis on which the trial court granted that motion. Conflict preemption was not raised in the motion, in the trial court's order, or in the appellate briefing. Thus, we apply the two-part *Davila* test to determine whether section 502(a)(1)(B) of ERISA completely preempts Gomez's claims. (*Davila, supra*, 542 U.S. at p. 210.)

First, we determine whether Gomez could have brought his claims under section 502(a)(1)(B) of ERISA. (*Davila, supra*, 542 U.S. at p. 210.) In making this determination, we consider whether (1) Gomez is the type of party that can bring a claim pursuant to ERISA section 502(a)(1)(B), and (2) whether the claim is cognizable as a claim for benefits under section 502(a)(1)(B) of ERISA. (*McCulloch Orthopaedic Surgical Services, PLLC v. Aetna Inc.* (2d Cir. 2017) 857 F.3d 141, 146; *Yaralian v. Fastovsky* (C.D.Cal. Feb. 10, 2016, No. CV 15-8989-GHK (Ex)) 2016 U.S.Dist.LEXIS 17161, at p. *9.)

Second, we ask whether there is some other independent legal duty, beyond that imposed by an ERISA plan, implicated by the defendant's actions. (*Davila, supra*, 542 U.S. at p. 210.) A state law claim that duplicates, supplements, or supplants ERISA's civil enforcement remedies is preempted. (*Id.* at p. 209; see *Port Medical, supra*, 24 Cal.App.5th at p. 173 [ERISA preempts state law claims that provide alternative

connection with an ERISA plan if it governs a central matter of plan administration or interferes with nationally uniform plan administration, or if it bears on an ERISA-regulated relationship.' " (*Bristol SL Holdings, Inc. v. Cigna Health & Life Insurance Co.* (9th Cir. 2024) 103 F.4th 597, 604; *Depot, Inc.,* at p. 666; *In re Essure Product Cases* (2023) 98 Cal.App.5th 228, 236.) Although ERISA preemption is broad, the Supreme Court has "cautioned against an 'uncritical literalism' that would make preemption turn on 'infinite connections.' " (*Egelhoff v. Egelhoff* (2001) 532 U.S. 141, 147.) Instead, courts should look to the objectives of ERISA as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans. (*Gobeille,* at p. 320.)

enforcement mechanisms for ERISA plan obligations]; see also *Groves v. Kaiser Foundation Health Plan, Inc.* (N.D.Cal. 2014) 32 F. Supp. 3d 1074, 1086 [the Ninth Circuit applies a " 'but for' " standard to determine whether a plaintiff is seeking an alternate enforcement mechanism].)

ERISA section 502(a)(1)(B) authorizes an action by a participant or beneficiary to recover benefits or enforce or clarify rights under the terms of a qualifying employee benefit plan. It follows that the existence of such a plan is a fundamental prerequisite to recovery under section 502(a)(1)(B) of ERISA. (*Hawk v. Consolidated Restaurant Operations, Inc.* (N.D.Tex. Feb. 22, 2007, No. 3: 03-CV-0399-B ECF) 2007 U.S.Dist.LEXIS 104907, at p. *17.)

Under ERISA, there are two types of qualifying employee benefit plans: employee welfare benefit plans and employee pension benefit plans. (29 U.S.C. § 1002(3).) At issue in this case is an employee pension benefit plan. ERISA defines such a plan as any "plan, fund, or program . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan" (i) "provide[s] retirement income to employees," or (ii) "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." (29 U.S.C. § 1002(2)(A).)

There is no "authoritative checklist" that can be consulted to determine whether an employer's benefit arrangement is an "employee benefit pension plan" under ERISA. (*Belanger v. Wyman-Gordon Co.* (1st Cir. 1995) 71 F.3d 451, 454-455.) As a result, courts "have developed several factors to help determine whether an ERISA plan exists." (*Gilliland v. Air Line Pilots Assn., Internat.* (N.D.Ga. 2009) 741 F.Supp.2d 1334, 1345; *Belanger,* at p. 455.)

Many courts have embraced the test fashioned by the Eleventh Circuit in *Donovan v. Dillingham* (11th Cir. 1982) 688 F.2d 1367, 1372 (*Dillingham*). *Dillingham* was one of the first courts "to consider the type of 'surrounding circumstances' from which one may

. . . infer that there is an ERISA plan notwithstanding the lack of a formal instrument to that effect." (*Kenney v. Roland Parson Contracting Corporation* (1994) 28 F.3d 1254, 1257.) *Dillingham* held that an ERISA plan is established "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." (*Dillingham,* at p. 1373.)

In *Fort Halifax Packing Co., Inc. v. Coyne* (1987) 482 U.S. 1 (*Fort Halifax*), the United States Supreme Court provided further guidance on the meaning of an ERISA plan.  In that case, the United States Supreme Court held that a Maine statute requiring employers to provide a one-time, lump-sum severance payment to employees displaced by plant closures was not an employee benefit plan, and hence not preempted by ERISA. (*Fort Halifax,* at pp. 3, 6, 12, 19.)  In reaching this conclusion, the United States Supreme Court explained that the purpose of ERISA preemption only arises "with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." (*Fort Halifax,* at p. 11.)  It also found that the Maine statute did not trigger ERISA because it created "no need for an ongoing administrative program for processing claims and paying benefits."[4] (*Fort Halifax,* at p. 12.)

Applying *Fort Halifax*, courts generally have found that the degree of discretion retained by the employer over the distribution of benefits is an important factor in deciding whether a severance plan is subject to ERISA.  (See *Cassidy v. Akzo Nobel Salt,*

---

[4]     As the United States Supreme Court described it, "[t]he employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control.  Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. . . .  To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes.  To do little more than write a check hardly constitutes the operation of a benefit plan." (*Fort Halifax, supra*, 482 U.S. at p. 12.)

*Inc.* (6th Cir. 2002) 308 F.3d 613, 616; *O'Connor v. Commonwealth Gas Co.* (1st Cir. 2001) 251 F.3d 262, 267; *Bogue v. Ampex Corp.* (9th Cir. 1992) 976 F.2d 1319, 1323; *Darlin v. Conrail* (E.D.Pa. 2000) 93 F.Supp.2d 599, 601.)  Plans in which benefits are predetermined or which involve " 'simple or mechanical determinations' " have been found not to be ERISA plans.  (*Cassidy,* at p. 616.)  Other factors considered by courts in determining whether severance benefits are governed by ERISA include:  (1) whether the benefits require a one-time, lump sum payment or continuous, periodic payments, (2) whether the delivery of benefits places an "on-going demand" on employer assets, and (3) whether the severance payments are triggered by a single event, such as a plant closing, or rather are continuous payments to be made generally to terminated employees. (*Cassidy,* at p. 616; *Crews v. General American Life Ins. Co.* (8th Cir. 2001) 274 F.3d 502, 506; *Schonholz v. Long Island Jewish Medical Center* (2d Cir. 1996) 87 F.3d 72, 76; *Delaye v. Agripac, Inc.* (9th Cir. 1994) 39 F.3d 235, 237; *Williams v. Wright* (11th Cir. 1991) 927 F.2d 1540, 1544-1545.)

The United States Department of Labor, in its regulations, has interpreted the term " 'employee pension benefit plan' " to exclude payments made to employees as part of a bonus program, "unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." (29 C.F.R. § 2510.3-2(c) (2025); *Emmenegger v. Bull Moose Tube Co.* (8th Cir. 1999) 197 F.3d 929, 932.)  When applying the bonus exclusion, the Ninth Circuit has held that "the paramount consideration is whether the primary purpose of the plan is to provide deferred compensation or other retirement benefits." (*Rich v. Shrader* (9th Cir. 2016) 823 F.3d 1205, 1210; *Juric v. USALCO, LLC* (D.Md. 2023) 659 F. Supp. 3d 619, 633; accord, *Williams v. Wright, supra*, 927 F.2d at pp. 1546-1547; *Oatway v. American Inernat. Group, Inc.* (3d Cir. 2003) 325 F.3d 184, 188; see also *Stern v. International Business Machines Corp.* (11th Cir. 2003) 326 F.3d 1367, 1374 [the way in which an employer characterizes its plan is a factor].)  Federal courts also have considered whether

13

the payments were discretionary, given in recognition of special service, awarded in addition to regular compensation, or systematically deferred until the end of employment. (*Oatway,* at p. 189; *Hilzendeger v. Wells Fargo Bank, N.A.* (S.D.Iowa 2024) 720 F. Supp. 3d 712, 720.)

      B.      *Analysis*

Gomez argues that Bradford failed to meet his initial burden to show Gomez's claims meet *Davila*'s test for complete preemption: namely, that Gomez (at some point) could have brought his claims under ERISA section 502(a)(1)(B), and that there is no other independent legal duty upon which the claims are based. (*Davila, supra*, 542 U.S. at p. 210.) In particular, Gomez argues that Bradford failed to establish the existence of a qualifying employee benefit plan covered by ERISA. Thus, Gomez asserts the burden never shifted to him to show a triable issue of material fact. (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1142.)

Bradford counters, arguing that, by Gomez's own admission, the verbal agreement between the parties, evidenced by and including the Aetna annuity, established an employee benefit pension plan subject to ERISA. We conclude Bradford has the better argument.

We begin with the allegations of the complaint, since the pleadings " ' "delimit the scope of the issues" ' " and "frame 'the outer measure of materiality in a summary judgment proceeding.' " (*Hutton v. Fidelity National Title Co., supra*, 213 Cal.App.4th at p. 493.) The complaint alleges that to induce Gomez to continue working on the farm Bradford promised to "open, maintain and fund," with yearly contributions, a "retirement annuity" account. The complaint alleges that Bradford subsequently "did" open a retirement annuity with Aetna, and then funded it with an initial contribution of nearly two thousand dollars. The principal wrong alleged in the complaint is Bradford's failure to perform on his promise to continue making annual contributions to the annuity account.

14

In opposing the motion for summary judgment, Gomez has attempted to reframe his complaint by referring to Bradford's promise as a "verbal retention incentive benefit," disclaiming any connection between the promised incentive benefit and the Aetna annuity. In essence, Gomez argues that because the Aetna annuity was not funded with yearly contributions, it cannot be the promised "incentive benefit." However, the burden of a defendant moving for summary judgment only requires that he or she negate the theories of liability alleged in the complaint. (*Hutton v. Fidelity National Title Co., supra*, 213 Cal.App.4th at p. 493.) Here, the complaint refers to Bradford's promise of a "retirement account," and specifically identifies the Aetna annuity as that account. Gomez's declaration in support of his opposition to the motion for summary judgment is to the same effect. Thus, we agree with Bradford that the relevant inquiry on appeal is whether the parties' agreement, as evidenced by and including the Aetna annuity, established a pension plan covered by ERISA.

Looking first to the *Dillingham* factors, we conclude that a reasonable person could ascertain the intended benefits (the retirement annuity), class of beneficiaries (Gomez and, separately, Roger Schantz), source of financing (annual contributions from the Trust),[5] and procedures for receiving benefits (described in the Aetna documents).

---

[5]    Paradoxically, Bradford asserts, based on expert opinion, that the Aetna plan "appears" to be a profit-sharing plan, meaning that no annual contributions were required. This is inconsistent with the alleged verbal agreement between the parties and seems to undermine Bradford's position regarding the establishment of a long-term ERISA plan. However, we find the expert opinion irrelevant since the interpretation of the written instrument is a question of law. (*Kitty-Anne Music Co. v. Swan* (2003) 112 Cal.App.4th 30, 37; *Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1413.) We construe the Aetna documents, consistent with the allegations of the complaint, as requiring annual installment payments in the stipulated amount of $1,916.91. In any event, for purposes of the summary judgment motion, Gomez was bound by the allegations in his complaint. (*City of Lodi v. Randtron* (2004) 118 Cal.App.4th 337, 347, fn. 15.)

Gomez complains about the lack of a written "plan" document, but he acknowledges that the establishment of an ERISA plan did not require a formal, written plan. (*Marshall, supra*, 2 Cal.4th at p. 1054; *Dillingham, supra*, 688 F.2d at p. 1372; see *Scott v. Gulf Oil Corp.* (9th Cir. 1985) 754 F.2d 1499, 1503, disapproval on other grounds by *Golden Gate Restaurant Assn. v. City and County of San Francisco* (9th Cir. 2008) 546 F.3d 639, 651.) Nor does ERISA exclude the plan merely because it applied to a small number of employees. (See *Williams v. Wright, supra*, 927 F.2d at p. 1545 [ERISA plan may cover only a single employee]; *Cvelbar v. CBI Ill. Inc.* (7th Cir. 1997) 106 F.3d 1368, 1376, abrogated on other grounds as stated in *Farr v. Rolls-Royce Corp.* (S.D.Ind. Feb. 10, 2015, No. 1:13-cv-01266-JMS-DKL) 2015 U.S.Dist.LEXIS 15570, at p. *7 [same]; *Biggers v. Wittek Industries, Inc.* (4th Cir. 1993) 4 F.3d 291, 297 [same].)

Citing *Fort Halifax*, Gomez argues the benefits arrangement was not an ERISA "plan" because the distribution of benefits required no ongoing administrative scheme. Gomez emphasizes that there was nothing discretionary about his eligibility for the benefit or the timing, or the form of the payment that he would receive. Gomez also stresses that Bradford made only one contribution to the Aetna annuity account.

We find *Fort Halifax* distinguishable. Unlike that case, which involved a one-time severance payment to employees affected by a plant closure, (*Fort Halifax, supra*, 482 U.S. at p. 3) the plan here involved the purchase of a retirement annuity that, as alleged, required an ongoing commitment by the employer to fund employee benefits and an ongoing commitment by an insurance company to administer those benefits. Even though Bradford may have had limited involvement in the administration of those benefits, this does not prevent the application of ERISA. (*Marshall, supra*, 2 Cal.4th at p. 1052; see *id*. at p. 1054 [the question is not the level of the employer's participation in an administrative program, but whether such a program was required at all]; *id*. at p. 1057 [delegation of plan administration is a "common feature" of employee benefit plans]; *Solis v. Koresko* (E.D.Pa. 2012) 884 F.Supp.2d 261, 278 [*Fort Halifax* does not require

16

that the employer itself be the one responsible for the administrative program].) We conclude the retirement annuity agreement, by its very nature, required an ongoing administrative program. (*Alegi v. Blue Cross & Blue Shield of Connecticut, Inc.* (D.Conn. Aug. 20, 1997, No. 3:97CV00787 (PCD)) 1997 U.S.Dist.LEXIS 24254, at p. *6 [even a "minimal, ongoing administrative scheme" is enough].)

Our conclusion is not altered by the fact that Bradford ultimately made only a single contribution to the annuity account. An employer "cannot defeat the existence of an ERISA plan simply by failing or refusing to discharge its duties under the plan." (*Dearth v. Great Republic Life Ins. Co.* (1992) 9 Cal.App.4th 1256, 1272; see *Marshall, supra*, 2 Cal.4th at p. 1058 [an employer cannot " 'opt out' " of ERISA by non-compliance].) "[T]o hold otherwise would allow the employer's malfeasance to deprive employees of the protections to which they would otherwise be entitled." (*Musmeci v. Schwegmann Giant Super Markets* (E.D.La. 2001) 159 F.Supp.2d 329, 348.)

Gomez urges us to follow the holding of *Peace v. American Gen. Life Ins. Co.* (5th Cir. 2006) 462 F.3d 437, in which the Fifth Circuit held that an employer's purchase of a single-premium annuity, intended to replace a pension that the employee lost by leaving his previous employment, was not an employee benefit plan subject to ERISA. (*Peace,* at pp. 438-439.) The majority opinion in *Peace* concluded that the purchase of the annuity was akin to a one-time severance payment, and did not create the need for an ongoing administrative scheme. (*Id.* at pp. 439-442.)

However, we find the dissenting opinion in *Peace* more compelling. It concluded that regardless of how the parties characterized the agreement, the arrangement was a " 'pension plan,' " (*Peace v. Am. Gen. Life Ins. Co., supra*, 462 F.3d at p. 445 [dis. opn. of Owen, J.]) and ongoing administration of the plan was necessary to ensure that the retirement benefits would be paid to Peace under the terms of the annuity. (*Id.* at p. 446-447 [dis. opn. of Owen, J.].) The fact that the employer delegated administration of the

17

retirement plan to an insurance company "d[id] not take [the] agreement . . . out of ERISA's ambit." (*Id*. at p. 446 [dis. opn. of Owen, J.].)

In our view, the most persuasive evidence is that the admitted purpose of the plan was to induce Gomez to continue working by "fund[ing] a retirement account for him." Certainly, this arrangement has elements of both a retirement plan and an incentive program, but we are persuaded that the "primary purpose" of the arrangement was to provide deferred compensation or other retirement benefits. (*Rich v. Shrader, supra*, 823 F.3d at p. 1210; *Williams v. Wright, supra*, 927 F.2d at p. 1547; see *Modzelewski v. Resolution Trust Corp.* (9th Cir. 1994) 14 F.3d 1374, 1377 [because ERISA's definition of a pension plan is so broad, "virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan"].) We reach this conclusion based on Gomez's description of the agreement, the nature of the account established (a retirement annuity), the timing of the distributions (at retirement), and the fact that the benefits were awarded in addition to Gomez's regular compensation.

Accordingly, we find that Bradford met its initial burden to establish the existence of an ERISA plan, and thereby met its burden under the first prong of the test for complete preemption. (*Davila, supra*, 542 U.S. at p. 210.)

Turning to *Davila*'s second prong, Gomez argues that his claims are predicated on an independent legal duty because, rather than suing "the plan" for improperly withholding benefits, "he is suing his former employers based on their false promises." However, this argument is set forth in a single paragraph consisting of seven conclusory sentences, none of which cite authority to support his assertion of a separate duty independent of the ERISA plan. Thus, to the extent Gomez has any valid argument here, we find it forfeited due to his failure to support the point with a reasoned argument and citations to authority. (*Sierra Watch v. County of Placer* (2021) 69 Cal.App.5th 86, 100; *Gilman v. Dalby* (2021) 61 Cal.App.5th 923, 937, fn. 4.)

In sum, we conclude Bradford met its initial burden to show that Gomez's claims are completely preempted and thereby shifted to Gomez the burden of demonstrating there is a triable issue of material fact.  Gomez has made no effort in this appeal to demonstrate the existence of a triable issue of fact.  Thus, we affirm the order granting summary judgment.

## DISPOSITION

The judgment is affirmed.  In the interests of justice, each party shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


_____\s\_____,
Krause, J.



We concur:



_____\s\_____,
Hull, Acting P. J.



_____\s\_____,
Boulware Eurie, J.